CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
FEB 05 2013
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| GEORGE H. ARCHIBALD, | ) | CASE NO. 5:12CV00095 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| GLEN D. MASTERS, et al., | ) | |
| | ) | By: B. WAUGH CRIGLER |
| Defendants. | ) | U.S. MAGISTRATE JUDGE |

The October 18, 2012 motion to dismiss for failure to state a claim filed by defendant, Glen D. Masters ("Masters") doing business as Berryville News Stand and in his individual capacity, is before the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B), to conduct proceedings and render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for the disposition of the motions. Defendant seeks to dismiss plaintiff's case in its entirety on the grounds that plaintiff has not alleged underlying discrimination in the first place and because a white naturalized citizen of British national origin is not protected by the anti-discrimination statutes. For the reasons that follow, the undersigned RECOMMENDS that an Order enter GRANTING the defendants' motion and DISMISSING plaintiff's complaint from the docket of the court.

**CASE HISTORY AND PROCEDURAL BACKGROUND**

Plaintiff, a white naturalized citizen of British national origin, is a *pro se* litigant who, since May 2011, had frequented the Berryville News Stand. (Dkt. No. 3, at 3.) Plaintiff alleges that on August 4, 2012, Masters approached plaintiff and inquired about a no trespass notice which another local business had issued against plaintiff.[1] (*Id.* at 4.) Defendant asked plaintiff to leave, because, according to the

---

[1] See Va. Code Ann. §18.2-119 which makes it a Class 1 misdemeanor to enter property or lands of another when the person has been forbidden to do so, either verbally or in writing.

complaint, defendant's customers and staff did not like plaintiff. (*Id.*) Plaintiff does not allege that defendant made reference to plaintiff's national origin during this or any prior encounter.

On August 6, plaintiff hand-delivered a letter to defendant objecting to being banned from defendant's business. (*Id.* at 5.) On August 8, a deputy sheriff served plaintiff a no trespass notice upon the plaintiff informing plaintiff not to enter the premises of the Berryville News Stand. (*Id.*) On September 12, the local paper ran a news article about the lawsuit in which a Berryville News Stand manager stated that plaintiff was banned because of his inappropriate behavior towards a female employee and asserted that defendant, who was born in France, would not have discriminated against another foreign-born individual. (Dkt. No. 5-1, at 1.) Plaintiff, a newspaper writer himself, published a response in the paper on September 18, 2012, admitting to making a comment but insisting that it was not inappropriate. (Doc. 5-2, at 1.)

Plaintiff filed a complaint in this court on September 6, 2012, alleging that he had been unlawfully discriminated against by the issuance of the no trespass notice for defendants' business premises. (Doc. No. 3.) Plaintiff, a white naturalized United States citizen of British national origin, claims that Masters violated plaintiff's rights secured under 42 U.S.C. §§ 1981, 1982, and 2000a and the Virginia Residential Landlord and Tenant Act. (*Id.*) Plaintiff seeks injunctive relief under 42 U.S.C. § 2000a and compensatory and punitive damages under 42 U.S.C. § 1981. (*Id.* at 9-10.)

Following the publication of the news article on September 18, 2012, plaintiff amended his complaint to include a claim under 18 U.S.C. § 241 for conspiracy to discriminate. (Doc. No. 5.) On October 18, 2012, defendants moved to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b). (Doc. No. 9.) By Order entered on October 23, 2012, the presiding District Judge referred all motions in this case to the undersigned. (Dkt. No. 13.) The undersigned addressed by separate Order under 28 U.S.C. § 636(b)(1)(A) the non-dispositive motions filed by the

2

parties during the course of proceedings and will address in this Report and Recommendation the motion to dismiss under 28 U.S.C. § 636(b)(1)(B).

**MOTION TO DISMISS**

Defendants assert that plaintiff is not entitled to relief on his own pleadings for several reasons: 1) that he is not a member of a protected class and, therefore, has no standing to assert discrimination; 2) the Virginia Residential Landlord and Tenant Act has no application to a commercial establishment; 3) the defendant cannot conspire with itself; and 4) there was no underlying discrimination related to plaintiff's race or national origin in that plaintiff's alleged offensive comments to a female employee constituted a legitimate non-discriminatory reason for banning plaintiff from the establishment. Plaintiff opposed dismissal essentially on the basis that he is a person of British origin and was barred from the promises.

On January 8, 2013, the court entertained oral argument. While the defendants' arguments essentially tracked the brief, plaintiff informed the court that he was not asserting a claim under the Virginia Residential Landlord and Tenant Act but only citing it for comparison purposes. The remainder of his argument centered on how he believed the defendant's conduct had harmed him. Interestingly, plaintiff made no reference to any statements by defendants regarding his national origin or facts establishing some nexus between plaintiff's national origin and defendants' conduct. In other words, he alleges only that he was forbidden from entering the premises, that he is of British origin, that there has been some reference to defendant being French, and that he has been hampered from carrying out his local newspaper reporting duties because he cannot enter the premises of this particular establishment.

3

## APPLICABLE LAW, FINDINGS AND CONCLUSIONS

### Pleading Standard

It is well settled that the court is to liberally construe *pro se* pleadings. *Hill v. Braxton*, 277 F.3d 701, 707 (4th Cir. 2002); *Terrell v. Bassett*, 353 F. Supp. 2d 658, 660-661 (E.D. Va. 2005). The Supreme Court of the United States has held, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). By the same token, the federal courts may not be an advocate for a *pro se* plaintiff and must hold the complaint to certain minimal pleading standards. *Holsey v. Collins*, 90 F.R.D. 122, 128 (D.C. Md. 1981); *Switzer v. Town of Stanley*, 2010 WL 4961912, at *2-3 (W.D. Va. December 1, 2010). Under Fed. R. Civ. P. 8(a), a claim must include: a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; a short and plain statement of the claim showing that the pleader is entitled to relief; and a demand for the relief sought, which may include relief in the alternative or different types of relief.

Under Fed. R. Civ. P. 12(b)(6), a cause of action may be dismissed for "failure to state a claim upon which relief may be granted." The court must accept as true any factual allegations contained in the complaint, though it need not accept legal conclusions; and, to survive a motion to dismiss, a complaint must provide sufficient facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)). Facial "plausibility" lies on a spectrum between possibility and probability, and it is established when the court is able to draw a reasonable inference that the defendant may be liable for the conduct alleged. *Id.* The complaint need not include detailed factual allegations, but the factual allegations must be more than a formulaic recitation of the elements of a cause of action and must raise a plausible right to relief above the speculative level. *Id.*

4

## National Origin Discrimination Under 42 U.S.C. §§ 1981, 1982 and 2000a

Plaintiff has asserted unlawful national origin discrimination under 42 U.S.C. §§ 1981, 1982, and 2000a. Courts have construed discrimination under section 1981 and section 1982 in the same manner since both were enacted as part of the Civil Rights Act of 1866. *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 448 (2008). Section 1981 prohibits discrimination in the making and enforcement of contracts, while section 1982 protects both real and personal property rights. 42 U.S.C. §§ 1981, 1982. Presumably, plaintiff asserts that defendant violated these statutes because the no trespass notice prevents him from entering a commercial establishment to purchase personal property in the form of a newspaper.

Plaintiff misses the fact that these provisions apply only to racial discrimination and do not encompass a claim of national origin discrimination. *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987) (holding that a person of Arabian ancestry may assert a claim of racial discrimination). While racial discrimination under the statute may be premised on ethnicity as well as race, it does not include national origin. *Id.* Therefore, to the extent plaintiff's claims under sections 1981 and 1982 rely on his national origin, the motion to dismiss should be granted. It is so RECOMMENDED.

On the other hand, 42 U.S.C. § 2000a explicitly prohibits national origin discrimination in places of public accommodation. The statute declares that all citizens are "entitled to the full and equal enjoyment . . . without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a. Plaintiff alleges that he "is a member of a protected class owing to his national origin as a British subject." (Dkt. No. 3, at 2.) The defendants argue that British-born naturalized citizens are not members of a protected class and, therefore, are not protected by the statute. Defendants analogize plaintiff's British national origin to that of the self-proclaimed "Confederate Americans" addressed in *Chaplin v. Du Pont Advance Fiber Systems*, 293 F. Supp. 2d 622 (E.D. Va.

5

2003). Relying on unpublished Fourth Circuit decisional authority, the court there held that Confederate Americans were not a protected class for the purposes of national origin discrimination. By the same token, the Supreme Court has defined national origin as "the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Mfg. Co., Inc.*, 414 U.S. 86, 88 (1973) (holding that discrimination on the basis of citizenship was not national origin discrimination). While the analysis in *Chaplin* did not explain why Confederate Americans were not protected, it is clear in that case that the Confederacy could not have been the country where the plaintiffs were born. The Confederacy is not now and never has been recognized as a foreign nation. On the other hand, the United Kingdom is a foreign nation, and its former subjects, though naturalized, appear protected under the statute. The Chairman of the Subcommittee reporting the bill explained that "[y]ou may come from Poland, Czechoslovakia, England, France, or any other country." *Espinoza v. Farah Mfg. Co., Inc.*, 414 U.S. at 89. As a threshold matter, the undersigned is of the view that discrimination based upon one's birth in England, if sufficiently pleaded and proved, is covered by 42 U.S.C. §2000a.

While plaintiff has alleged he is a member of the protected class who has been prohibited from entering a place of public accommodation, he has not alleged any facts to show a causal nexus between his national origin and the defendants' reason for taking action against him. Section 2000a does not require that places of public accommodation must serve all those who belong to a protected class. Instead, it states that a public accommodation cannot discriminate *"on the ground of* race, color, religion, or national origin." 42 U.S.C. § 2000a (emphasis added). While plaintiff does belong to a protected class, he alleged no facts in his complaint which suggest that his national origin was a basis for defendant's action. Under Fed. R. Civ. P. 8, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,

6

Case 5:12-cv-00095-MFU-BWC   Document 27   Filed 02/05/13   Page 6 of 8   Pageid#: 204

678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Because plaintiff has not alleged any facts in his amended complaint which would even suggest that his national origin was a reason for defendant's action, his claim under 42 U.S.C. § 2000a should be dismissed.[2] It is so RECOMMENDED.

**Race Discrimination Under 42 U.S.C. §§ 1981 and 1982**

Defendants argue that any claims under sections 1981 and 1982 for race discrimination fail as a matter of law because plaintiff, a Caucasian, is not a member of a racial minority. However, §1981 clearly protects whites as well as non-whites from race discrimination. *McDonald v. Santa Fe Transp. Co.*, 427 U.S. 273, 288 (1976). Nevertheless, plaintiff has set forth no facts suggesting that he was discriminated against on the basis of his race. Therefore, plaintiff's claims under 42 U.S.C. §§ 1981 and 1982 should be dismissed. It is so RECOMMENDED.

**Virginia Residential Landlord and Tenant Act and 18 U.S.C. § 241**

Finally, it is clear from oral argument that plaintiff's claims under the Virginia Residential Landlord and Tenant Act and 18 U.S.C. § 241 should also be dismissed. Plaintiff informed the undersigned that he did not intend to assert a claim under the Virginia Residential Landlord and Tenant Act. Moreover, the Act, by its own terms, does not apply to a commercial establishment like Berryville News Stand. Therefore, any such claim should be dismissed, and it is so RECOMMENDED.

Plaintiff also alleges, under 18 U.S.C. § 241, that defendant conspired with his employees to discriminate against plaintiff under 42 U.S.C. §§ 1981, 1982, and 2000a. Should the presiding District Judge adopt the undersigned's recommendations to dismiss plaintiff's claims under those statutes, any

---

[2] Defendants argued at the hearing that, even if discrimination had been present, the claim should be dismissed because defendants alleged a non-discriminatory reason. However, where plaintiff has pleaded a causal nexus, whether a legitimate non-discriminatory reason exists becomes a question of fact under the *McDonnell Douglas* test. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973).

7

claim for conspiring to violate them also would fail. Moreover, the claim would fail under the intracorporate immunity doctrine since Masters is sued both in his individual and representative capacity and all alleged conspirators were employed by Berryville News Stand. *Buschi v. Kirven*, 775 F.2d 1240, 1252 (4th Cir. 1985). Therefore, the motion to dismiss plaintiff's claim under 18 U.S.C. § 241 should be granted, and it is so RECOMMENDED.

**SUMMARY**

For the reasons set forth above, it hereby is RECOMMENDED that the October 18, 2012 motion to dismiss all plaintiff's claims be GRANTED, and an order should enter DISMISSING plaintiff's action from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record and to plaintiff at his last known address.

ENTERED: /s/ [signature]
U. S. Magistrate Judge

2-5-2013
Date